# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKI CRAWFORD and KEITH CRAWFORD, JR. and K. C., a minor, by and through his next of kin, Vicki Crawford, <br><br> Plaintiffs, <br><br> vs. <br><br> WASHINGTON COUNTY CHILDREN AND YOUTH SERVICES ("CYS"), CYS CASEWORKER CHRISTIE CROSS, CYS CASEWORKER CHRISTINE PAPOVICH, CYS CASEWORKER NANCY GRAY, CYS SUPERVISOR LAURA BORASH and CYS DIRECTOR JEFFREY FELDON, <br><br> Defendants. | 2:06cv1698 <br> Electronic Filing |

## OPINION

CERCONE, D.J.

Keith Crawford, Jr., and Vicki Crawford ("plaintiffs") commenced this civil rights action pursuant to 42 U.S.C. § 1985, 42 U.S.C. § 1983, the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), 42 U.S.C. 675(5)(D)-(E), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, against Washington County Children and Youth Services ("CYS") and a number of its directors, supervisors and caseworkers ("the individual defendants") seeking injunctive and declaratory relief purportedly needed as a result of defendants' asserted failure to investigate properly plaintiffs' parental treatment and care of their minor child, K.C. Presently before the court is defendants' motion to dismiss on a variety of grounds, including lack of jurisdiction, lack of standing, failure to state a claim and untimeliness. For the reasons set forth below, the motion will be granted in part and denied in part.

In general, plaintiffs allege that CYS and its directors were grossly negligent in training administrators and caseworkers to conduct investigations based on suspicion of child neglect and

abuse, which in turn resulted in a grossly inadequate investigation into plaintiffs' home life and parenting practices. The deficient investigation assertedly occurred because defendant CYS maintains unconstitutional customs, policies, and practices relative to the investigation of abused children, the reunification of abused or neglected children with their families, and adoption and choice of foster parents for such children.

Due to the acts, omissions and policies of the defendants, plaintiffs' minor child initially was removed unlawfully from their care. The investigation that followed led to state court proceedings ending in the termination of plaintiffs' parental rights and familial relationship, and the filing of an "Indicated Report" with Childline Registry naming plaintiffs as perpetrators of child abuse. The conduct of defendants was the result of both the grossly negligent training and intentional and deliberately indifferent acts that directly impaired the constitutional rights of plaintiffs as natural parents to raise their child in the manner they saw fit and believed to be in the child's best interest.

The minor child insisted throughout the deficient investigation that his parents had never abused or harmed him and expressed his desire to be reunited with plaintiffs. Notwithstanding this, the Orphans Court never permitted the testimony of the minor child. Defendants pressed ahead intentionally or recklessly for termination of parental rights and adoption without the exercise of "reasonable efforts" and with the lack of valid grounds for changing the goal of placement from reunification with the natural parents to adoption. And defendants ultimately had no compelling state interest that justified the resulting deprivation of plaintiffs' civil and constitutional rights.

Plaintiffs proclaim that they do not seek to have this court disturb the outcome of the state court proceedings; instead, they seek to have this court declare that their constitutional rights were violated (1) during the investigation underlying those proceedings and (2) as a result of the ongoing post-judicial deprivation of their parental rights and familial relationship. In addition, plaintiffs allege on behalf of themselves and the minor child that defendants' gross negligence

and/or intentional misconduct involved a failure to: (1) adopt practices that would promote one particular and stable foster home; (2) provide adequate therapeutic counseling for the minor child; (3) inquire into and followup on the minor child's attitude change resulting from the withdraw from plaintiffs, his natural parents, his recantation of asserted inappropriate sexual behavior relative to plaintiffs and the minor child, and his ongoing wishes to be reunited with plaintiffs; (4) provide adequate follow-up health care concerning the minor child's mental and emotional health; and (5) take appropriate actions that would have reunified the minor child with plaintiffs.

Plaintiffs' amended complaint specifically avers at Count I that CYS and the individual defendants conspired to violate plaintiffs' civil rights and deny them equal protection under the law as guaranteed by the 14th Amendment of the U.S. Constitution, in contravention of 42 U.S.C. § 1985, by participating or acquiescing in the "unlawful treatment, investigation, and seizure of plaintiff's minor child." Amended Complaint at ¶ 25. Defendants purportedly acted jointly and in concert with each other and other quasi-governmental agencies and individual agents employed by them. They assertedly failed to stop these other organizations and individuals from engaging in unlawful treatment and investigation of plaintiffs and the deprivation of their parental and familial rights. Id.

At Count II it is alleged that in contravention of 42 U.S.C. § 1983 CYS and the individual defendants deprived plaintiffs of their rights to be free from unlawful seizure and the deprivation of liberty without due process of law, as guaranteed by the Fourth Amendment of the U.S. Constitution and applied to the states under the Fourteenth Amendment. Id. at ¶ 28. Defendants intentionally or recklessly deprived plaintiffs of the free exercise of their familial rights under color of state law and pursuant to CYS's policies and customs, which included CYS and the individual defendants' "inadequate supervision, . . . investigation, and . . . training." Id. at ¶ 29.

At Count III it is averred that CYS and the individual defendants' practices and procedures purportedly denied "plaintiffs' right to prompt and permanent placement either by

reunification or adoption," which violated the plaintiffs' substantive and procedural due process rights. Similarly, the abovementioned conduct denied plaintiffs their right to family association with their child as guaranteed by the First, Ninth, and Fourteenth Amendments. Id. All of "these rights are guaranteed by 42 U.S.C. §§ 675(5)(D) & (E), which are the provisions of" the AACWA. Id. at ¶ 32.

Finally, defendants knew or should have known of K.C.'s Attention Deficit Hyperactivity Disorder, but due to their intentional or grossly negligent conduct and constitutionally deficient policies and procedures, they failed to accommodate and treat his disability, in violation of the ADA. Id. at ¶¶ 35-36. This lack of treatment at the hands of defendants denied equal protection of law to all members of the class entitled to the protections of the ADA and the equal protection rights of plaintiffs.

In light of the foregoing, plaintiffs seek injunctive relief (1) declaring that defendants must acknowledge and protect the rights of "all plaintiffs" pursuant to § 1983, the AACWA and the ADA; (2) ordering defendants to enforce all of the plaintiffs' constitutional and statutory rights; (3) ordering defendants to amend and correct plaintiffs' record and case history to show that their activities as parents were proper, reasonable, and legal; and (4) ordering defendants to reassess and reevaluate plaintiffs and their rights relative to the issue of reunification with their minor child. They concede that any such order must be limited to prospective equitable relief, and may not effect a direct reversal of the state court judgements below, and request an award of costs and attorney fees.

Defendants move to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on several grounds. First, they assert plaintiffs' claims are barred by the Rooker-Feldman doctrine because federal courts cannot exercise jurisdiction over a claim that was litigated in state court or is inextricably intertwined with a final state adjudication. Specifically, defendants argue that if this court were to declare plaintiffs' CYS "record and case history" null and void, then the Court of Common Pleas' decision to terminate plaintiffs' parental

4

rights would be rendered erroneous because the state court considered CYS's findings to be sufficient and relied on them in reaching its decision.

Second, defendants contend plaintiffs' claims relating to CYS's recommendations to the Court of Common Pleas must be dismissed because CYS is afforded absolute immunity for its actions in petitioning and formulating and making recommendations to the state court. Third, plaintiffs' 42 U.S.C. §§ 1983 and 1985 claims assertedly are barred by the statute of limitations. Purportedly, the earliest plaintiffs' knew or had reason to know of the claimed injuries, which entail and stem from false accusations of child neglect and abuse, would have been October 21, 2000, when CYS took plaintiffs' minor child into protective custody. At the latest, plaintiffs would have been aware of the injury on January 14, 2004, when the Court of Common Pleas entered the order terminating their parental rights. Defendants argue that regardless of which of these two dates are used to determine when the statute of limitations began to run, plaintiffs did not file their suit until December 22, 2006, which was well beyond the two-year statute of limitations applicable to §§ 1983 and 1985 claims in this jurisdiction.

Fourth, defendants challenge plaintiffs' ability to bring claims on behalf of K.C. on the ground that they lack standing after the state court terminated their parental rights. Finally, defendants argue plaintiffs have failed to state a cause of action under the AACWA because plaintiffs allege that defendants violated sections of the AACWA that merely define specific terms used throughout the AACWA, and those sections do not provide a private cause of action.

In response to defendants' Rooker-Feldman argument, plaintiffs assert that the facts presented are not inextricably intertwined with the state court adjudications because the success of the claims do no rely on a reversal of any state court judgments or decisions. From plaintiff's perspective the complaint simply seeks relief in the form of pre-litigation and post-litigation "procedural corrections," which purportedly does not involve disturbing the state court decisions.

Plaintiffs also contend defendants are not entitled to absolute or qualified immunity. First, plaintiffs maintain that defendants are not protected by immunity for actions that took place

prior to the issuance of any court orders. Second, defendants are not shielded by immunity if they clearly violate acceptable professional judgment and minimum professional standards, which they assertedly did. Finally, plaintiffs insist that an action by a state agency employee can give rise to state agency liability if the employee makes government policy, and that policy or decision violates the constitutional rights of an individual.

Plaintiffs attack defendants' statute of limitations defense by arguing that the deprivation of their minor child and the defendant's continuous unconstitutional practices constitute ongoing violations that renew the statute of limitations period after each repeated violation. Therefore, the statue of limitations purportedly has not run on plaintiffs' claims.

Plaintiffs also take issue with defendants' argument that they do not have legal standing to assert civil claims on behalf of the minor child. They assert that despite losing their parental rights, they have standing based on several other theories. First, they have standing based on their intimate associational relationship with their minor child, which courts have held in various cases conveys a viable liberty interest. Second, plaintiffs note non-parents have standing in cases involving similar circumstances. Plaintiffs posit that if a non-parent can have standing, why should a former parent, although now a non-parent, be denied standing? Lastly, they argue that their standing is preserved because they have been subjected to on-going constitutional violations. Therefore, they have standing under the doctrine of capable of repetition yet evading review because they could suffer the same violations with another or even the same child.

It is well-settled that in reviewing a motion to dismiss under Federal rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal of a complaint is proper only where the averments of the complaint fail to provide directly or inferentially notice of the material elements necessary to sustain a recovery under a viable legal theory of recovery. <u>Bell Atlantic Corp. v. Twombly</u>, –

U.S – , 127 S. Ct. 1955, 1968 (2007) . In other words, the allegations of the complaint taken as a whole must be grounded in enough of a factual basis to raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." Id. at 1969 n. 8 (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (interpreting Conley "appears beyond doubt" standard as consistent with the established rule that a complaint will be deemed to rest on sufficient grounds if it adequately puts the defendant on notice of the essential elements of a cause of action) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S.Ct. at 1969.

At this juncture plaintiffs lack standing to bring civil claims on behalf K.C. Accordingly, those counts of the complaint grounded in a violation of his rights – Count III alleging a violation of the AACWA and Count IV alleging a violation of the ADA – will be dismissed without prejudice to renew in the event plaintiffs obtain relief from this court and the state court which would permit them to bring a legal proceeding on K.C.'s behalf.

In general, there are three prerequisites for standing: (1) the plaintiff must have suffered an "injury in fact" – an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there be a causal connection between that injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision. Bennett v. Spear, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161 (1997). Plaintiffs cannot satisfy the first or third of these requirements for claims asserted on behalf of K.C. as long as the state court proceeding resulting in the termination of their parent rights remains intact. Thus, they lack standing unless and until they obtain relief

from this court on their § 1983 claim and that relief leads to changed circumstances in the state court system that would be consistent with the assertion of legal rights on K.C.'s behalf.

It is well settled that an individual's ability to claim standing is based on the rights they possess and the injuries they have sustained at the time suit was filed. It is equally well settled that "a 'federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state judgement the same effect as would the adjudicating state' and 'the same results follow in section 1983 suits brought in federal courts.'" Davis v. Thornburgh, 903 F.2d 212, 220 (3d Cir. 1990) (quoting Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988)).

An order terminating parental rights divests the parent of any legal right to contest (1) the future adoption of the child, (2) who has custody of the child, and (3) who controls and can exercise the legal rights of the child. 23 Pa. C. S. § 2521 ("Effect of decree of termination"). Upon entry of a decree of termination "[a]n agency or person receiving custody of a child shall stand in loco parentis to the child and in such capacity shall have the authority, inter alia, to consent to marriage, to enlist in the armed services and to major medical, psychiatric and surgical treatment and to exercise such other authority concerning the child as a natural parent could exercise." 23 Pa. C. S. § 2521(c); see also, In re B.L.L., 787 A.2d 1007, 1013 (Pa. Super. 2001) ("Initially, termination of parental rights for all practical purposes ends the parent/child relationship as unequivocally as the death of the child, Adoption of Harvey, 375 Pa. 1, 99 A.2d 276 (1953), and for that reason the United States Supreme Court, in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), set the standard of proof at clear and convincing evidence."); In re Bowman, 647 A.2d 217, 218 (Pa. Super. 1994) ("'[T]he complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take....").

A decree of termination has been entered by the trial court divesting plaintiffs of their parental rights to K.C. At this juncture this court is required to give the same Full Faith and

Credit to that judgement that would be given by the courts of Pennsylvania. It follows that unless and until that decree is vacated or modified by the state courts, plaintiffs lack the legal capacity to assert or control any of the rights of K.C. in this or any other court. Accordingly, the asserted claims under the AACWA and the ADA at Counts III and IV of the Amended Complaint must be dismissed.[1]

---

[1] Alternatively, even if plaintiffs have standing to assert civil claims on behalf of K.C., they have nevertheless failed to state a cause of action under the AACWA. Plaintiffs draw support for their unprecedented claim from §§ 675(5)(D) and (E) of the AAWCA, which define the term "case review system" as used in legislation enacted pursuant to the spending power of Congress under Article One of the Constitution. The question thus raised is whether a private cause of action should be recognized.

"In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the federal government to terminate funds to the state." Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (U.S. 2002). A private cause of action brought under §1983 to enforce state noncompliance of federal spending legislation is permitted only when Congress unambiguously manifests an intent to confer individual rights. Id. A statute creates a federal right if it was intended to benefit the putative plaintiff, imposes a binding obligation on the state or other governmental unit, and is not "'too vague and amorphous' such that it is beyond the competence of the judiciary to enforce." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (internal quotations omitted).

In Suter v. Artist M., 503 U.S. 347, 112 S. Ct. 1360 (1992), the Supreme Court, in reviewing an attempt to enforce a private right claim pursuant to §1983 for an alleged violation of the AACWA, held that 42 U.S.C. § 671(a)(15) did not unambiguously confer an enforceable right on individual children within the child welfare system because only "a rather generalized duty" was imposed upon the states, "to be enforced not by private individuals, but by the Secretary" in the manner set forth in the AACWA. Id. at 363, 112 S. Ct. at 1370. As plaintiffs note, Congress, in response to the Suter Court's suggestion that a private right generally is foreclosed if its basis emanates within a section requiring a state plan, amended the Social Security Act in 1994 by adding "[i]n an action brought to enforce a provision of this Chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this Chapter requiring a State plan or specifying the required contents of a State plan." 42 U.S.C. § 1320a-2. The amendment did not, however, overrule Suter; it only prevents a court from refusing to find a private right enforceable under § 1983 simply because the right arises from a section involving state plan requirements. See Charlie H. v. Whitman, 83 F.Supp.2d 476, 484 (D. N.J. 2000)(citing Harris v. James, 127 F.3d 993, 1002 (11th Cir.1997)). Plaintiffs' contention that the congressional response to Suter thus acknowledges the viability of their asserted cause of action under the AACWA is thus wide of the mark.

Moreover, in 31 Foster Children v. Bush, 329 F.3d 1255, 1271 (11th Cir. 2003), the

9

Plaintiffs have stated a § 1983 claim for relief at Count II. "To state a cause of action under § 1983, plaintiffs must allege the deprivation of a constitutional right under color of state law." Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health, 503 F.3d 256, 261 (3d Cir. 2007)(citing 42 U.S.C. § 1983). They contend that their right to be free of unreasonable searches and seizures and liberty rights in the exercise of their familial and parenting relationship have been infringed by defendants' failure to conduct an investigation which was constitutionally sufficient and proceed on assessments that where sufficiently explored and grounded in fact.

The assertedly deficient investigation occurred as a result of CYS's inadequate training of its agents, improper policies and customs, and negligent investigation into plaintiffs' parenting and living habits. Amended Complaint at ¶28. It is alleged that during the investigation defendants pressed ahead intentionally or recklessly for termination of parental rights and adoption without the exercise of "reasonable efforts" and with the lack of valid grounds for changing the goal of placement from reunification to adoption. And defendants assertedly had no compelling state interest that justified the resulting deprivation of plaintiffs' civil and constitutional rights. Furthermore, plaintiffs have alleged that defendants policies and practices

---

United States Court of Appeals for the Eleventh Circuit specifically held that 42 U.S.C. §§ 675(5)(D) and (E) of the AACWA "do not supply a basis for conferring rights enforceable under §1983." The court reasoned that because §675(5) is definitional in nature, a cause of action cannot be based on that section alone. Id. It further opined that §§ 675(5)(D) and (E) do not contain the "focused-on-the-individual, rights-creating language required by Gonzaga. Instead, the language of those provisions gives them an aggregate or system wide focus [as opposed to] one that indicates concern with whether the needs of any particular child are met." Id. at 1272 (citing Gonzaga, 536 U.S. at 288, 122 S.Ct. at 2277-78).

At Count III plaintiffs have pled that defendants violated plaintiffs' due process and various other constitutional rights as "guaranteed by 42 U.S.C. § 675(5)(D) and (E)." Amended Complaint at ¶32. In light the precedent on this issue, and particularly the persuasive opinion by the Eleventh Circuit in 31 Foster Children, it is clear that recognition of a private cause of action for violation of the AACWA in the instant setting is unwarranted and plaintiffs' claim asserting such violations must be dismissed on this alternative ground as well.

employed during the investigation lead to a culmination of failures that contributed to the violation of their constitutional rights, including the failure to (1) adopt practices that would promote one particular and stable foster home; (2) provide adequate therapeutic counseling for the minor child; (3) inquire into and followup on the minor child's attitude change resulting from the withdraw from plaintiffs, his natural parents, his recantation of asserted inappropriate sexual behavior relative to plaintiffs and the minor child, and his ongoing wishes to be reunited with plaintiffs; (4) provide adequate follow-up health care concerning the minor child's mental and emotional health; and (5) take appropriate actions that would have reunified the minor child with plaintiffs.

Plaintiffs' allegations arise from a context that involves fundamental rights. See Santosky v. Kramer, 455 U.S. 745, 753 (1982)( "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."). Dissolution of those rights may be effected only where the state is armed with powerful countervailing interests. Lassiter v. Dept. of Social Services, 452 U.S. 18, 27 (1981).

Although plaintiffs' allegations are based upon a number of assertions that run counter to state law and procedure in termination proceedings and boarder on the type of vague and generalized statements that resulted in the failure to advance sufficient grounds in support of the claim in Twombly, they contain enough of an asserted factual grounding to survive a motion to dismiss. While it appears indeed likely that plaintiffs will be unable to produce evidence to support the factual assertions concerning the lack of adequate investigation and grounds to support their chosen course of conduct, that is not a basis to grant a motion to dismiss. See Twombly, 127 S. Ct. at 1969 n. 8 (collecting cases recognizing the "unobjectionable proposition that, when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder," including Continental Collieries, Inc. v.

11

Shober, 130 F.2d 631, 635 (3d Cir. 1942) ("No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it")). If discovery should prove that defendants had no reasonable grounds to support their undertakings and they followed policies and procedures that resulted in a blind eye being turned to the lack of a factual basis for the initial assessments drawn about plaintiffs' parental practices and familiar relationship with K.C., and blindly advanced those assessments while ignoring significant evidence supporting contrary assessments and conclusions, plaintiffs will have demonstrated that the underlying investigation failed to comply with the constitutional mandates governing the state's undertakings in the arena in question.

Moreover, defendants' numerous affirmative defenses are not appropriate grounds for dismissal at this juncture and are better assessed at summary judgement. First, defendants' factual assertions from the state court records cannot carry conclusive weight at this point in the proceeding. Defendants have exclusive control of the pertinent files and information and until the discoverable information from those files is disclosed to counsel and plaintiffs are given an opportunity to advance contrary evidence in support of their contentions, the state court records cannot be accorded the status of gospel truth. This is particularly true where the claimed constitutional violation is premised upon the state's use of deficient practices and procedures during the underlying investigation. See Davis, 903 F.2d at 227-28 (Becker, J. Dissenting) (observing that the pre-termination procedure and the termination proceeding are inextricably intertwined and positing as sound logic that the procedure employed in state court cannot conclusively foreclose a federal court from undertaking its duty to assure constitutional mandates were observed as part of that process where the process itself is what is alleged to be constitutionally deficient).

The inability to give conclusive weight to the state court records in the instant setting also flows from the unique interrelation between the doctrine of res judicata and § 1983 actions challenging action taken under color of state law. It has long been settled that in a § 1983 action

the doctrine of res judicata applies "only to federal claims that actually were litigated, rather than to those that could have been litigated, in the earlier state court suit." Lehman v. Lycoming County Children's Services Agency, 648 F.2d 135,145 (3d Cir. 1981) (In Banc) (Garth, J.). In other words, "a state court judgement forecloses a § 1983 litigant from raising grievances in federal court only if such claims have been pressed before, and decided by, a state tribunal." Id. (quoting New Jersey Educational Ass'n v. Burke, 579 F.2d 764 (3d Cir.), cert. denied, 439 U.S. 894 (1978)). Because plaintiffs did not advance their constitutional deficient and lacking in reasonable grounds claim in state court, they may litigate it in this court. And while it remains to be seen whether Full Faith and Credit will require this court to accord collateral estoppel effect to certain essential findings necessary to the state court judgements, it follows a fortiori that it cannot be determined that such conclusive effect is warranted as to all of the facts reflected in the state court records with regard to plaintiffs' § 1983 claim where discovery has not occurred.

Second, defendants' challenges to plaintiffs' ability to establish standing do not bar consideration of plaintiffs' claim as outlined above. While there is much force to defendants' contention that the various forms of relief plaintiffs request from this court are barred by the Rooker-Feldman doctrine, there is at least the realistic possibility that plaintiffs may prove their entitlement to a form of relief that could redress certain aspects of the harm following from an established constitutional violation. A ruling that defendants violated plaintiffs' constitutional rights by conducting a constitutionally deficient investigation and formulating recommendations based on constitutionally deficient practice and procedures does not equate to nor require a finding that the state court judgments based on the investigation and recommendations were erroneous. See Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 491-92 (3d Cir. 1997) (Rooker-Feldman did not preclude consideration of § 1983 claim predicated on allegation that CYS improperly formulated and made recommendations in dependency proceeding because a ruling that the plaintiff's due process rights were violated by interjection of malice or personal bias did not require finding that state court judgments based on

13

recommendations were erroneous); Marian v. Marian, 376 F.3d 143, 153 (3d Cir. 2004) ("Likewise, in this case, a finding that the Montgomery County defendants violated Librett's or Rachel's substantive due process rights in investigating the allegations of abuse would not require a finding that the Court of Common Pleas erred in relying on the report stemming from the investigation.").

Furthermore, an order requiring the conducting of an investigation in compliance with constitutional mandates and the reformulation of recommendations based on that investigation could lead to meaningful redress for at least part of the harm claimed to stem from the asserted constitutional violation. As previously noted, plaintiffs concede that they may only obtain prospective relief and cannot seek to undo the state court judgments pre se through the proceeding in this court. And while it is often said that termination effects a final and irreversible outcome, this is not precisely in accord with Pennsylvania law. "What scarce Pennsylvania case law there is suggests that termination proceedings, governed by 1 Pa. Cons. Stat. §§ 301 et seq. ... are modifiable and subject to reopening" at least where such relief is requested before adoption of the child has occurred. Lehman v. Lycoming County Children's Services Agency, 648 F.2d 135, 175 (3d Cir. 1981) (In Banc) ( Rosenn, J., dissenting, joined by Higginbotham, J. and Sloviter, J.) (citing In re Adoption of R.H., 401 A.2d 341 (Pa. 1979) and In re Adoption of Baby Boy (Benjamin), 305 A.2d 360 (Pa. 1973)); see also In re H.E.W., 410 A.2d 793, 796 (Pa. 1980) (remanding with direction to vacate reinstated termination decree and proceed anew on petition for termination in proceeding initiated by parent's "petition to open and vacate" original termination decree). There is no indication in the instant record that K.C. has been adopted. Thus, "[a]rmed with such a judgment [from this court], [plaintiff] may be in a position to seek reconsideration of the [termination] order" through a petition seeking to reopen for the purposes of prospective application. Marran, 376 F.3d at 154.

In this regard, the instant case is distinguishable from Davis, where a natural parent had her parental rights terminated. The parent brought a claim challenging the procedure used to

place a child for adoption when a private intermediary is used. The parent expressly declared that she was not seeking to undo the termination order leading to the child's adoption, but instead sought to establish that the consent process in that setting was constitutionally deficient. In affirming the trial court's dismissal of the action, the Third Circuit held that the termination of the natural parent's rights effectively eliminated any interest in her biological daughter that she sought to secure. Davis, 903 F.2d at 220. Thus, the parent lacked standing because "once the termination order was entered, [she] could no longer demonstrate that she had suffered an injury 'likely to be redressed by a favorable decision.'" Id. (quoting Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S. Ct. 1917, 1924, 48 L. Ed. 2d 450 (1976)). Essentially, the parent had nothing to gain with respect to her child by proving that the procedure under the Pennsylvania Adoption Act being challenged was unconstitutional. Id.

Here, plaintiffs likewise do not seek to obtain direct review or reversal of the state court decrees. They only seek to establish that defendants' conduct and practices and procedures used to form the foundation for those decrees were constitutionally infirm. In other words, they do not seek to establish their parental rights in this court or have them implicitly reinstated from the relief they seek, and thus unlike the circumstances in Davis, whether such rights can and should be reinstated is not a matter that will unequivocally or implicitly flow from an adjudication of their § 1983 claim. Thus, the present situation is not one where plaintiffs are simultaneously seeking to have a termination order be treated as valid and yet modified by the outcome of the proceeding. Compare Davis, 903 F.2d at 221 n. 17 ("Thus, though she is effectively seeking to modify that order, it bars this action, as her complaint is directed to matters legally independent of the proceedings by which her parental rights were terminated and the order may not simultaneously be treated as valid and yet be modified."). Consequently, the state court decrees do not strip plaintiffs of standing to proceed with their § 1983 claim as outlined above.

Defendants' contention that they enjoy absolute immunity is unavailing as to the above construction of plaintiffs' § 1983 claim. Defendants correctly note that they "are entitled to

15

absolute immunity for their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors, who were immune from suit at common law." Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 493 (3d Cir. 1997). And this protection extends to any harm premised on "inaccurate recommendations to the court." Id. Nevertheless, absolute immunity is limited only to "prosecutorial activities that are 'intimately associated with the judicial phase of the [court] process.'" Id. at 495(citing Burns v. Reed, 500 U.S. 478, 493, 111 S.Ct. 1934, 1943 (1991)).

At this juncture it remains unclear as to the extent that the defendants' investigation into the plaintiffs' parental and familial practices is protected by absolute immunity. The allegations put forth in plaintiffs' complaint are broad enough to include CYS conduct, policies and practices undertaken in the course of the investigation that are beyond the scope of such protection. And although a number of these activities may ultimately prove to be "intimately associated" with the judicial process, and therefore enjoy immunity, such a determination can only appropriately be made after the record has been properly developed and the precise factual basis for plaintiffs' § 1983 claim becomes explicitly clear.

Defendants' reliance on the statute of limitations is misplaced for precisely the same reasons. While it is clear that plaintiff's cause of action accrued no later than January 14, 2004, it is unclear whether equitable grounds exist that might toll or otherwise displace the running of time or the statute's application in general. Furthermore, the statute of limitations is an affirmative defense that involves a determination of judgment. Accordingly, any application of the defense at this juncture would be inappropriate.

Notwithstanding the above, plaintiffs have failed to set forth a viable §1985 claim. In order to state a claim under 42 U.S.C. § 1985(3), the plaintiff must allege "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in

furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997)(citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790 (1971)). Plaintiffs' allegations come up short on a number of these elements.

Plaintiffs aver that K.C. is a member of a suspect class due to his disability from ADHD, and assert he was denied equal protection by defendants because of his disability. Amended Complaint at ¶25. Plaintiffs' allegations further press the contention that K.C.'s equal protection rights apply to and protect both K.C. and their rights. There is no support for plaintiffs' contentions. As discussed previously, plaintiffs do not have standing to bring claims on behalf of K.C.; therefore, the claim in relation to him must be dismissed. Absent K.C.'s disability, plaintiffs have not averred any facts that give notice of the essential element that defendants' alleged improper conduct was motivated by a racial or class-based discriminatory animus. Accordingly, plaintiffs' §1985 must be dismissed without prejudice unless and until plaintiffs obtain relief from the state court that reinstates their parental rights visa-visa K.C.

Date: January 29, 2008

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:  Robert T. Lynch, Esquire
     Lynch Legal Services
     2900 Fairmount Boulevard
     Cleveland Hts, OH 44118

     Robert J. Grimm, Esquire
     Swartz Campbell LLC
     U.S. Steel Tower, Suite 4750
     600 Grant Street
     Pittsburgh, PA 15219