# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKI CRAWFORD and KEITH CRAWFORD, JR. and K. C., a minor, by and through his next of kin, Vicki Crawford, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | 2:06cv1698<br>Electronic Filing |
| WASHINGTON COUNTY CHILDREN AND YOUTH SERVICES ("CYS"), CYS CASEWORKER CHRISTIE CROSS, CYS CASEWORKER CHRISTINE PAPOVICH, CYS CASEWORKER NANCY GRAY, CYS SUPERVISOR LAURA BORASH and CYS DIRECTOR JEFFREY FELDON, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## OPINION

CERCONE, D.J.

Keith Crawford, Jr., and Vicki Crawford ("plaintiffs") commenced this civil rights action pursuant to 42 U.S.C. § 1985, 42 U.S.C. § 1983, the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), 42 U.S.C. 675(5)(D)-(E), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, against Washington County Children and Youth Services ("CYS") and a number of its directors, supervisors and caseworkers ("the individual defendants") seeking injunctive and declaratory relief purportedly needed as a result of defendants' asserted failure to investigate properly plaintiffs' parental treatment and care of their minor child, K.C. Presently before the court is defendants' motion for summary judgment. For the reasons set forth below, the motion will be granted.

In general, plaintiffs allege that CYS and its directors were grossly negligent in training administrators and caseworkers to conduct investigations based on suspicion of child neglect and abuse, which in turn resulted in a grossly inadequate investigation into plaintiffs' home life and

parenting practices. The deficient investigation assertedly occurred because defendant CYS maintains unconstitutional customs, policies, and practices relative to the investigation of abused children, the reunification of abused or neglected children with their families, and adoption and choice of foster parents for such children.

Due to the acts, omissions and policies of the defendants, plaintiffs' minor child initially was removed unlawfully from their care. The investigation that followed led to state court proceedings ending in the termination of plaintiffs' parental rights and familial relationship, and the filing of an "Indicated Report" with Childline Registry naming plaintiffs as perpetrators of child abuse. The conduct of defendants was the result of both the grossly negligent training and intentional and deliberately indifferent acts that directly impaired the constitutional rights of plaintiffs as natural parents to raise their child in the manner they saw fit and believed to be in the child's best interest.

Plaintiffs proclaim that they do not seek to have this court disturb the outcome of the state court proceedings; instead, they seek to have this court declare that their constitutional rights were violated (1) during the investigation underlying those proceedings and (2) as a result of the ongoing post-judicial deprivation of their parental rights and familial relationship. In addition, plaintiffs allege on behalf of themselves and the minor child that defendants' gross negligence and/or intentional misconduct involved a failure to: (1) adopt practices that would promote one particular and stable foster home; (2) provide adequate therapeutic counseling for the minor child; (3) inquire into and followup on the minor child's attitude change resulting from the withdraw from plaintiffs, his natural parents, his recantation of asserted inappropriate sexual behavior relative to plaintiffs and the minor child, and his ongoing wishes to be reunited with plaintiffs; (4) provide adequate follow-up health care concerning the minor child's mental and emotional health; and (5) take appropriate actions that would have reunified the minor child with plaintiffs.

Plaintiffs' amended complaint specifically avers at Count I that CYS and the individual

defendants conspired to violate plaintiffs' civil rights and deny them equal protection under the law as guaranteed by the 14th Amendment of the U.S. Constitution, in contravention of 42 U.S.C. § 1985, by participating or acquiescing in the "unlawful treatment, investigation, and seizure of plaintiff's minor child." Amended Complaint at ¶ 25. Defendants purportedly acted jointly and in concert with each other and other quasi-governmental agencies and individual agents employed by them. They assertedly failed to stop these other organizations and individuals from engaging in unlawful treatment and investigation of plaintiffs and the deprivation of their parental and familial rights. Id.

At Count II it is alleged that in contravention of 42 U.S.C. § 1983 CYS and the individual defendants deprived plaintiffs of their rights to be free from unlawful seizure and the deprivation of liberty without due process of law, as guaranteed by the Fourth Amendment of the U.S. Constitution and applied to the states under the Fourteenth Amendment. Id. at ¶ 28. Defendants intentionally or recklessly deprived plaintiffs of the free exercise of their familial rights under color of state law and pursuant to CYS's policies and customs, which included CYS and the individual defendants' "inadequate supervision, . . . investigation, and . . . training." Id. at ¶ 29.

At Count III it is averred that CYS and the individual defendants' practices and procedures purportedly denied "plaintiffs' right to prompt and permanent placement either by reunification or adoption," which violated the plaintiffs' substantive and procedural due process rights. Similarly, the abovementioned conduct denied plaintiffs their right to family association with their child as guaranteed by the First, Ninth, and Fourteenth Amendments. Id. All of "these rights are guaranteed by 42 U.S.C. §§ 675(5)(D) & (E), which are the provisions of" the AACWA. Id. at ¶ 32.

Finally, defendants knew or should have known of K.C.'s Attention Deficit Hyperactivity Disorder, but due to their intentional or grossly negligent conduct and constitutionally deficient policies and procedures, they failed to accommodate and treat his disability, in violation of the ADA. Id. at ¶¶ 35-36. This lack of treatment at the hands of defendants denied equal protection

of law to all members of the class entitled to the protections of the ADA and the equal protection rights of plaintiffs.

In light of the foregoing, plaintiffs seek injunctive relief (1) declaring that defendants must acknowledge and protect the rights of "all plaintiffs" pursuant to § 1983, the AACWA and the ADA; (2) ordering defendants to enforce all of the plaintiffs' constitutional and statutory rights; (3) ordering defendants to amend and correct plaintiffs' record and case history to show that their activities as parents were proper, reasonable, and legal; and (4) ordering defendants to reassess and reevaluate plaintiffs and their rights relative to the issue of reunification with their minor child. They concede that any such order must be limited to prospective equitable relief, and may not effect a direct reversal of the state court judgements below, and request an award of costs and attorney fees.

Defendants moved to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on several grounds. On January 29, 2008, an opinion and order were issued resolving defendants' motion to dismiss. After thorough review of the law and detailed consideration of plaintiffs' allegations, it was determined that plaintiffs lacked standing to bring civil claims on behalf of K.C. Accordingly, those counts of the complaint grounded in a violation of his rights – Count III alleging a violation of the AACWA and Count IV alleging a violation of the ADA – were dismissed without prejudice to renew in the event plaintiffs ultimately obtained relief from this court and the state court which would permit them to bring a legal proceeding on K.C.'s behalf. Count I alleging a §1985(3) claim based on K.C.'s ADHD disorder also was dismissed for essentially the same reasons.

The court declined to dismiss plaintiffs' § 1983 claim at Count II prior to discovery. It was noted that "[a]lthough plaintiffs' allegations are based upon a number of assertions that run counter to state law and procedure in termination proceedings and border on the type of vague and generalized statements that resulted in the failure to advance sufficient grounds in support of the claim in Twombly, they contain enough of an asserted factual grounding to survive a motion

4

to dismiss." Opinion of January 29, 2008 (Doc. No. 45) at 11. It was further noted that although "it appear[ed] indeed likely that plaintiffs will be unable to produce evidence to support the factual assertions concerning the lack of adequate investigation and grounds to support [the defendants'] chosen course of conduct," that was not a basis to grant a motion to dismiss. Accordingly, the issues were framed as follows:

> If discovery should prove that defendants had no reasonable grounds to support their undertakings and they followed policies and procedures that resulted in a blind eye being turned to the lack of a factual basis for the initial assessments drawn about plaintiffs' parental practices and familiar relationship with K.C., and blindly advanced those assessments while ignoring significant evidence supporting contrary assessments and conclusions, plaintiffs will have demonstrated that the underlying investigation failed to comply with the constitutional mandates governing the state's undertakings in the arena in question.

Opinion of January 29, 2008, at 12. Consideration of defendants' numerous well-founded affirmative defenses likewise was deferred until summary judgment. Id. at 12.

Discovery has conclusively demonstrated that plaintiffs have virtually no evidence or legal grounds to establish a violation of due process as framed in Count II of their Amended Complaint or to bar the application of defendants' affirmative defenses. Specifically, after the benefit of discovery plaintiffs cannot advance anything beyond the assertion of vague generalities to meet their burden to prove the investigation and processes leading to the termination of their parental rights and the filing of the Incident Report were constitutionally deficient. The applicable standards require more.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

First and foremost, plaintiffs have no evidence to support a finding that the statute of limitations on their due process claim has not run due to tolling or for other equitable reasons.

6

Plaintiffs were dilatory in asserting that their due process rights were violated by the defendants' investigation and seek to shield their untimeliness by invoking the "continuing violation" doctrine. Their attempt to do so is unavailing.

The continuing violation doctrine is an "equitable exception to the timely filing requirement." Cowell v. Palmer Tp., 263 F.3d 286, 292 (3d Cir.2001). Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Id. (quoting Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991)). The doctrine only applies, however, where the defendant's conduct is "more than the occurrence of isolated or sporadic acts." Id. (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir.1995)). In order to invoke the doctrine successfully, a plaintiff must show two things: (1) that at least one act occurred within the filing period; and (2) the injury is not the occurrence of "isolated or sporadic acts" of intentional acts but a "persistent, on-going pattern." West, 45 F.3d at 754-55.

Plaintiffs do not and cannot point to any act or undertaking in the course of defendants' investigation leading to the termination of their parental rights or the filing of the Incident Report that occurred within two years preceding the filing of their instant complaint. They point only to a recent proceeding wherein defendants sought a Protection From Abuse order from the Washington County Court of Common Pleas based on plaintiff Vicki Crawford's unauthorized contact with K.C., which proceeding was based in part on the fact that her parental rights have been terminated. While plaintiffs have identified an incident in which the practical effects from the earlier termination of their parental rights continues to be realized, they have not demonstrated an ongoing form of behavior or practice by defendants that was re-employed to effectuate a new violation of their rights. They were long age stripped of their parental rights and new and repeated assertions or conduct undertaken by them under the auspices of having those rights does not change that fact. Thus, relying solely on the legal effect of a prior proceeding that

7

has become final fails to show the defendants' allegedly unconstitutional conduct was an ongoing practice or form of conduct. See Cowell, 263 F.3d at 293 ("In Ocean Acres [v. Dare County Bd. of Health, 707 F.2d 103, 106 (4th Cir.1983)], the Fourth Circuit reaffirmed that '[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.' Id. (quotation omitted). This conforms with our understanding of the continuing violations doctrine, see Sameric [Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998)], and we see no reason to depart from it.").

Plaintiffs likewise cannot satisfy the second requirement needed to invoke the continuing violation doctrine. The inquiry involves consideration of three factors: (1) subject matter--whether the violations constitute the same type of illegal conduct, tending to connect the defendant's acts in a continuing violation; (2) frequency--whether the acts are recurring or more in the nature of isolated incidents; and (3) the degree of permanence--whether the act had a degree of permanence such that it should have triggered the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. Id. (citing West, 45 F.3d at 755 n. 9). The third factor is the most important and requires consideration of the policy rationale behind the statute of limitation; "[t]hat is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Id. at 292, 295.

Even assuming for the purposes of argument that plaintiffs can somehow satisfy the first two factors to be considered under the second prong, they cannot overcome the persuasiveness of the third: the degree of permanence flowing from the termination of their parental rights. While this court pointed out in its opinion of January 28, 2008, that the termination of parental rights is not permanent for all intent and purposes, the deprivation of such rights had a degree of permanency that would trigger a reasonable person to exercise diligence in raising any claim based on constitutionally deficient practices and procedures employed by the state officials effectuating the termination. The legal effect of any such practices and procedures having

become readily apparent at that juncture, permitting a suit to proceed years after the cause of action clearly accrued would amount to nothing more that a sympathetic decision to relieve the plaintiffs from exercising diligence in asserting their rights, a proposition that runs counter to the very purposes to be served by the doctrine.  Id. at 295 (where the legal effect from liens on real property were well known to the plaintiff, permitting invocation of the continuing violation doctrine based on ongoing legal consequences from the liens' existence would run counter to the policy considerations underlying the statute of limitations, and thus the permanency factor was to be weighed heavily against the plaintiff).

Plaintiffs also have failed to come forward with any affirmative evidence to prove that a defect of constitutional dimension occurred in the investigation leading to the termination of their parental rights and/or the filing of the Incident Report.  In response to defendants' well-presented motion and well-supported 54 concise statements of material fact, plaintiffs make reference to certain portions of one case worker's deposition and/or information in the state court records to raise the following matters: defendants recognized that at one point K.C. recanted his allegations of sexual abuse but did not consider the recantation further; CYS caseworkers presented false information relative to the home environment and familial relationship plaintiffs provided to K.C.; CYS failed to investigate K.C.'s allegations of abuse by foster parents caring for K.C.; and CYS failed to address the "foster care drift" that K.C. experienced.  In addition, plaintiffs assert that defendants failed to evaluate properly the mental health issues affecting K.C. and did not make a showing that K.C. was in danger to a degree warranting his separation from plaintiffs under national or recognized standards such as the Child Welfare League of America.  Plaintiffs also point to the unsuccessful attempt by defendants to obtain a Protection From Abuse Order against plaintiff Vicki Crawford after she contacted K.C. at a shelter in November of 2007 as evidence of defendants bringing fraudulent and unfounded charges.

At this juncture plaintiffs "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations."  Williams v.

9

Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor may they rely on conclusory allegations or general legal principles masquerading as factual matters in attempting to defeat a well supported motion for summary judgment. Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Both Local Rule 56.1E and the case management order of April 27, 2008 (Doc. No. 28) entered in this case required plaintiffs to come forward and dispute with clarity and record support the facts set forth in defendants' concise statement of material facts. They have not done so and their inability to do so is readily apparent from a review of defendants' submissions. Accordingly, the court finds that each of defendants' concise statements of material fact is entitled to be credited for the purpose of summary judgment and they are, as supplemented, found to be supported and persuasive. Consequently, they are incorporated into the court's analysis and disposition of the pending motion.

Against the above backdrop, it is clear that no material issue of fact remains and defendants are entitled to judgment as a matter of law. Plaintiffs have not advanced sufficient evidence to support a finding that K.C.'s recantation was not properly evaluated. Defendants had ample evidence to continue with their chosen course even after K.C. recanted. He had been evaluated by specialists from Pittsburgh Child Advocacy Center at Children's Hospital, including Dr. Mark King and Dr. Farheem Fahim, both of whom found the allegations to be credible. Tellingly, the Commonwealth Court concluded that there was substantial evidence to support the Incident Report. More than bald allegations are necessary to upset the finality of the state court proceedings pursuant to a due process violation claim.

The same is true of plaintiffs' assertion that the family home and the familial relationship were not sufficiently deficient to warrant the termination of their parental rights. Judge Gladden of the Court of Common Pleas of Washington County found that plaintiffs had failed to provide K.C. with basic schooling, medical care, housing and supervision. There was more than sufficient evidence in the record to support this assessment and a termination of parental rights. And plaintiffs have offered nothing beyond disagreement and dissatisfaction with the results of

the state court process to support their § 1983 claim. Without sufficient evidence to support a finding that unconstitutional practices and policies caused a violation of plaintiff's due process rights, plaintiffs cannot survive the pending motion.

Plaintiffs likewise have failed to come forward with competent evidence to support a finding that defendants' evaluation of K.C.'s mental health issues resulted in a violation of their parental rights and/or the filing of the Incident Report. No expert testimony or analysis of defendants' evaluation and resulting course of conduct has been undertaken. Merely asserting that an approach that did not involve K.C.'s separation from the family home should have been employed does not make it so or provide evidence that will support an error of constitutional dimension.

Finally, the remaining grounds advanced by plaintiffs are predicated on and seek to vindicate K.C.'s rights. Plaintiffs lack standing to pursue such claims. In addition, they have failed to demonstrate in any logical and coherent way how matters pertaining to or occurring during K.C.'s foster care resulted in a violation of their rights. The termination of their parental rights and the filing of the Incident Report were founded on and supported by events that occurred while K.C. was in their custody. The state courts found that those events provided the evidence needed to sustain defendants' actions and the subsequent events referenced by plaintiffs do not supply sufficient evidence to overturn those decisions. Consequently, defendants are entitled to summary judgment.

Date: March 12, 2009

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Robert T. Lynch, Esquire
Lynch Legal Services
2900 Fairmount Boulevard
Cleveland Hts, OH 44118

Robert J. Grimm, Esquire
Swartz Campbell LLC
U.S. Steel Tower, Suite 4750
600 Grant Street
Pittsburgh, PA 15219